**FUR WORKERS UNION, LOCAL NO. 72, et al. v. FUR WORKERS UNION, NO. 21238, et al.**

**No. 7189.**

United States Court of Appeals for the District of Columbia.

Decided March 27, 1939.

Petition for Rehearing Denied May 5, 1939.

Samuel Levine and Sidney C. Schlesinger, both of Washington, D. C., and Louis B. Boudin, of New York City, for appellants.

Ringgold Hart and Irvin Goldstein, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from an order of the District Court of the United States for the District of Columbia permanently enjoining the appellants from picketing the place of business of the appellee H. Zirkin & Sons, Inc., in Washington. The parties who must principally be referred to in the course of this opinion are the appellant Fur Workers Union, Local No. 72 (an unincorporated association), of the International Fur Workers Union of the United States and Canada, affiliated with the C. I. O.; the appellee Fur Workers Union, No. 21238 (an unincorporated association), affiliated with the American Federation of Labor; and the appellee H. Zirkin & Sons, Inc., a corporation of Washington, D. C.[1] For convenience, these parties will be referred to as the appellant and the appellees; or where necessary for differentiation, as the appellant union, the appellee union, and the appellee Zirkin's, or Zirkin's.

The action was commenced by a bill in equity filed by the appellees. The appellants filed an answer and upon the issues joined there was a hearing. After several witnesses had testified on each side, the trial judge ordered a temporary injunction, and thereafter, upon the basis of some further testimony, a permanent one. This appeal was then taken.

The injunction was based upon findings of fact which, summarized, were to the following effect: For a long time prior to the commencement of the action, Zirkin's had been engaged in business in the District of Columbia as a retail dealer in ladies' clothing, including fur coats. Of a total of twenty-five employees, eleven were fur workers. On several occasions prior to August 15, 1937, the appellant had requested Zirkin's to acknowledge it as the sole representative of the fur workers for the purpose of collective bargaining,

[1] The only other parties are the following appellants: International Fur Workers Union of the United States and Canada; I. Gartenhaus, individually and as president of Fur Workers Union, Local No. 72; Josephine Cardoza, individually and as secretary of Fur Workers Union, Local No. 72; Morris Schwartz; Carmen Haley; all other unknown members, representatives and agents of the International Fur Workers Union and the Fur Workers Union, Local No. 72; and unknown pickets.

and to require the fur workers to join it and to negotiate a contract with it upon the subject of wages, hours and conditions of employment. During this period prior to August 15, 1937, the appellant also tried, but without success except in respect of one of the employees, to wit, the appellant Schwartz, to persuade the fur workers at Zirkin's to join it. After Schwartz had joined, at a date not made to appear, Zirkin's did recognize the appellant as the sole representative of Schwartz for collective bargaining, but consistently declined to recognize it as the representative of the other fur workers, and also refused to encourage or require their membership in it. On August 15, 1937, Schwartz went on strike and with the other appellants (except the appellant Haley, who will be referred to later) commenced picketing Zirkin's business establishment. On August 27, 1937, Haley, who had in the meantime become a member of the appellant, went on strike. On September 21, 1937, upon the application of seven of the remaining nine fur workers to the American Federation of Labor, the latter issued to the seven a certificate of affiliation authorizing the constitution of a unit to be named the Fur Workers Union, No. 21238, in Washington, to wit, the appellee union. Shortly thereafter, the remaining two of the nine fur workers joined the appellee union, whose membership then comprised all of the then active fur worker employees of Zirkin's, that is, all except Schwartz and Haley, who had, as stated above, discontinued work and had joined the picketing. The appellee union then organized as a collective bargaining unit, and on September 29, 1937, its members, through a selected representative, negotiated with Zirkin's, and on September 30, 1937, entered into a written agreement upon the subject of wages, hours and conditions of employment; and Zirkin's acknowledged and accepted the appellee union as the exclusive representative for collective bargaining of all of the fur workers then in Zirkin's actual employ. Neither the refusal of the employees other than Schwartz and Haley to join the appellant union, nor the application for the issuance of a certificate authorizing constitution of the appellee union, occurred as the result of influence, coercion or persuasion on the part of Zirkin's.[2] Notwithstanding the foregoing, the appellant union, through its members and agents, continued to picket Zirkin's place of business. The picketing was in mass formation and in numbers as great as thirty-five, many of the pickets carrying banners or placards. The purpose of the picketing was to coerce Zirkin's and its fur worker employees to violate the agreement entered into with the appellee union and to cause Zirkin's to rescind its recognition of that union. The persons picketing Zirkin's place of business were disorderly in their conduct, made assaults and attempted assaults upon the fur worker employees at Zirkin's, intimidated and coerced them by threats of bodily harm, and interfered with customers of Zirkin's while they were entering or leaving the business establishment. The trial court further found as a fact that no labor dispute existed between the appellees and the appellants. The trial court made no finding that unlawful acts would be continued unless restrained, or that substantial and irreparable injury to the appellees' property would follow, or that, as to each item of relief granted, greater injury would be inflicted upon the appellees by the denial of relief than upon the appellants by the granting of it, or that the appellees had no adequate remedy at law, or that the public officers charged with the duty of protecting the appellees' property were unable or unwilling to furnish adequate protection.

In terms of findings of fact, though in reality as conclusions of law, the trial court concluded further that the appellee union was properly and legally organized as a collective bargaining unit, and that the agreement of September 30, 1937, was negotiated and consummated pursuant to the provisions of the National Labor Relations Act (49 Stat. 449, 29 U.S.C.A. § 151 et seq.), and that the picketing described was without justification and unlawful. The court made certain further conclusions of law in terms stated as such, to wit, that no labor dispute existed between the appellants and the appellees, and that the appellees individually and collectively were entitled to have the appellants and each of them and their agents, servants and employees, permanently enjoined from continuing picketing, parading, carrying banners and signs, and acts of coercion, persuasion, intimidation, interference and threats against the appellee union or any of its members, or against the appellee

---

[2] On the subject of coercion by Zirkin's, there was a conflict in the evidence.

4

Zirkin's, and permanently enjoined from in any manner interfering with the property or property rights of any of the appellees.

The contentions of the parties to the appeal are based largely upon the provisions of the Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C.A. § 101 et seq., and the National Labor Relations Act. The pertinent provisions of these Acts are set forth in the margin.[3]

[3] The Norris-LaGuardia Act:

"[Sec. 1] . . . no court of the United States, as herein defined, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this Act; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this Act."

"Sec. 7. No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

"(b) That substantial and irreparable injury to complainant's property will follow;

"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

"(d) That complainant has no adequate remedy at law; and

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

"Sec. 13. When used in this Act, and for the purposes of this Act—

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The National Labor Relations Act:

"Sec. 2. When used in this Act—

* * *

"(9) The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of

Against the order of the court decreeing the permanent injunction, the appellants assigned numerous errors, but in their briefs they reduce their contentions to three, and of these, in the view we take of the case, it is necessary to discuss but one. That contention is that under the facts and law, a labor dispute exists between the appellants and the appellees, and therefore, in the absence of the complete findings required by Section 7 of the Norris-La Guardia Act, 29 U.S.C.A. § 107, the trial court was without jurisdiction to issue the injunction. And, say the appellants, the findings required by the Norris-LaGuardia Act were not made.

# I

■ We think the contention of the appellants is correct. As will be noted from the provisions of the Norris-LaGuardia Act quoted in the margin, Section 7 deprives the United States courts of jurisdiction to issue injunctions in any case involving or growing out of a labor dispute except after findings of fact by the court that unlawful acts have been committed and will be continued unless restrained, that substantial and irreparable injury to the complainant's property will follow, that as to each item of relief granted greater injury will be inflicted upon the complainant by the denial of relief than upon the defendants by the granting thereof, that the complainant has no adequate remedy at law, and that the public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection. As appears from the foregoing statement of the case, the only one of these findings made by the trial court was that unlawful acts had been committed. Therefore, if within the meaning of the Act the case is one

---

collective bargaining or other mutual aid or protection.

"Sec. 8. It shall be an unfair labor practice for an employer—

"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7.

"(2) To dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: . . .

 * * *

"(5) To refuse to bargain collectively with the representatives of his employees, subject to the provisions of Section 9 (a).

"Sec. 9. (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided*, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer.

"(b) The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

"(c) Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 10 or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives.

"Sec. 10. (a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise.

 * * *

"(h) When granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by the Act entitled 'An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes', approved March 23, 1932 (U.S.C.,Supp. VII, title 29, secs. 101–115).

"Sec. 13. Nothing in this Act shall be construed so as to interfere with or impede or diminish in any way the right to strike."

involving or growing out of a labor dispute, the trial court was, without jurisdiction to issue the injunction.

When the facts found in the instant case are viewed in terms of the definitions of Section 13, subsections (a), (b) and (c), of the Act, 29 U.S.C.A. § 113(a–c), it is clear, we think, that the case is one involving or growing out of a labor dispute. The case within subsection (a) "involves persons who are engaged in the same industry"—to wit. the appellee Zirkin's and the fur workers in the appellant and appellee unions; it "involves persons who are engaged in the same . . . craft" —to wit, the fur workers in the two unions; it involves persons who are "employees of the same employer"—to wit, the fur worker members of the appellee union and Schwartz and Haley, who, but for the strike would have continued as actual employees of Zirkin's, and who are, under the National Labor Relations Act, to be considered employees despite the strike;[4] it involves a dispute between "one [employer] . . . and one or more employees"—to wit, Zirkin's and Schwartz and Haley as employees; it involves a dispute between "one [employer] . . . and one [association] . . . of employees"—to wit, Zirkin's and the appellant union; it involves a dispute between "one or more employees . . . and one [association] . . . of employees" —to wit, Schwartz and Haley and the appellee. union; it involves a dispute between "one or more employees . . . and one or more employees"—to wit, Schwartz and Haley and the fur worker employee members of the appellee union; it involves a dispute between "one [association] . . . of employees" and another such association—to wit, the appellant and appellee unions. The case involves within subsection (b) "a person or association . . . participating or interested in a labor dispute . . . [because] relief is sought against" the appellant union, which has "a direct . . . interest therein." The case involves or grows out of a labor dispute within the meaning of the term "labor dispute" in subsection (c) of Section 13 because it is a "controversy concerning . . . the association or representation of persons in negotiating . . . terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." That is to say, the controversy concerns the representation of persons—to wit, fur workers—in negotiating terms or conditions of employment, although some of the members of the appellant union (those other than Schwartz and Haley) disputing with Zirkin's do not stand in the proximate relation of employees to Zirkin's as employer, and although, to the extent that the dispute is between the appellant and appellee unions, the disputants do not stand in the proximate relation of employer and employee to each other.

But if there is any doubt, looking at the language alone of the Norris-LaGuardia Act, that the controversy in the instant case comes within it, that doubt is, we think, removed by Lauf v. E. G. Shinner & Co., 1938, 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872, and New Negro Alliance v. Grocery Co., 1938, 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012. In Lauf v. E. G. Shinner & Co., an employer was subjected to picketing by a union to which none of his employees belonged, the purpose of the picketing being to compel him to cause his employees to join the union. The employer was indifferent as to the union membership of his employees. He sought an injunction in the United States District Court for the Eastern District of Wisconsin in order to protect his business against injury by the picketing. The trial court did not make the findings of fact required by the Norris-LaGuardia Act, but found that there was no labor dispute and therefore issued an injunction.[5] Its action was sustained in the Court of Appeals for the Seventh Circuit, 1936, 82 F.2d 68, 1937, 90 F.2d 250. On certiorari to the Supreme Court of the United States, the rulings below were reversed, the Supreme Court holding that on the facts there was a labor dispute, and that therefore, in the absence of the findings required by the Norris-LaGuardia Act, the District Court had no jurisdiction to issue the injunction. The

---

[4] "Sec. 2. When used in this Act—

\* \* \*

"(3) The term 'employee' . . . shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantial equivalent employment. . . ." 29 U.S.C.A. § 152(3). And see National Labor Relations Board v. Mackay Co., 1938, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381.

[5] The case is not reported.

instant case would parallel Lauf v. E. G. Shinner & Co. if only the appellant union and the appellee Zirkin's were involved. But if in Lauf v. E. G. Shinner & Co., a labor dispute existed within the meaning of the Act, a fortiori a labor dispute exists in the instant case, because the addition to the controversy of a second union, the appellee union, comprising a majority of the employees, makes the controversy not less, but more, a "labor dispute" within the meaning of that phrase.[6] In New Negro Alliance v. Grocery Co., supra, a philanthropic association of negroes, not a labor union, picketed one of the stores of the Grocery Company located in a colored district of Washington, with the object of causing the hiring of colored clerks. None of the members of the picketing association had worked at the store or were themselves seeking employment therein. At the instance of the Grocery Company, an injunction was issued by the District Court of the United States for the District of Columbia, the theory of the trial court being that no labor dispute was involved, and that therefore the Norris-LaGuardia Act did not apply. The order of the trial court was sustained in this court upon appeal. But upon writ of certiorari to the Supreme Court of the United States, both rulings below were reversed. The Supreme Court held that the dispute was a labor dispute within subsections (a), (b) and (c) of Section 13 of the Act, 29 U.S. C.A. § 113(a–c), and emphasized the provision of subsection (a) to the effect that "A case shall be held to involve or to grow out of a labor dispute when the case in-

volves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; . . . or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined)." And it emphasized subsection (b) as characterizing a person or association as participating or interested in a labor dispute "if relief is sought against him or it, and if he or it . . . has a direct or indirect interest therein, . . . "; and emphasized subsection (c) as defining the term "labor dispute" as including "any controversy concerning terms or conditions of employment, . . . regardless of whether or not the disputants stand in the proximate relation of employer and employee." The Supreme Court said:

"These definitions plainly embrace the controversy which gave rise to the instant suit and classify it as one arising out of a dispute defined as a labor dispute. They leave no doubt that The New Negro Alliance and the individual petitioners [officers of the Alliance] are, in contemplation of the Act, persons interested in the dispute."

The opinion of the Supreme Court cited Senn v. Tile Layers Union, 1937, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229, and Lauf v. E. G. Shinner & Co. To the effect that a controversy substantially like the one in the instant case is a labor dispute, see also: Grace Co. v. Williams, 8 Cir., 1938, 96 F. 2d 478, and Houston & North Texas M. F. Lines v. Local Union No. 886, W.D.Okl., 1938, 24 F.Supp. 619, both of which cite

---

[6] The findings of fact made by the trial court in Lauf v. E. G. Shinner & Co. and printed in the margin of the opinion in the Circuit Court of Appeals (82 F.2d 68, 69), make mention of but one union, to wit, the picketing union referred to in the foregoing statement of the case. In the course of the opinion in the Circuit Court of Appeals, it is at one point implied and at another expressly stated that there was an additional union, one which the employees had themselves organized at the places of business of the employer. Examination of the record in the case in the Supreme Court discloses reference in the answer and cross-complaint, in the assignment of errors, and in the testimony of several witnesses, to the existence of a union organized by the employees. But in the majority opinion in the Supreme Court, the existence of a second union is not

mentioned; the case is considered in the Supreme Court upon the basis only of the findings of fact made by the trial court. There is a reference in the dissenting opinion of Mr. Justice Butler to a second union. In paragraph 1 of the headnote of the case as printed in the Official Reports of the Supreme Court (303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872) there is a reference to a second union.

We state the foregoing for the reason that the appellants' brief in the instant case asserts that Lauf v. E. G. Shinner & Co. involves two unions, whereas the appellee Zirkin's brief states that there is but one. Since the majority opinion in the Supreme Court was written upon the basis of the trial court's findings, in which reference was made to but one union, the case for its precedent value must, we think, be treated as a one-union case.

Lauf v. E. G. Shinner & Co. and New Negro Alliance v. Grocery Co.

In the brief of the appellee union, the instant case is compared to United Electric Coal Companies v. Rice, 7 Cir., 1935, 80 F.2d 1, and it is sought to distinguish both the instant case and that case from Lauf v. E. G. Shinner & Co. upon the ground that in the latter the employer was an interested party to the controversy, whereas in the instant case the employer Zirkin's was not, upon the findings of fact, such a party, and whereas in United Electric Coal Companies v. Rice the employer was not such a party. The appellee union asserts that the controversy involved in the instant case is merely as to which one of two competing unions shall be the sole bargaining agency for Zirkin's employees, and that the employer is indifferent, and that there is no question as to wages, hours, or working conditions.[7] In United Electric Coal Companies v. Rice, two unions were disputing as to collective bargaining rights, and one was picketing an employer indifferent to the employees' choice. He sought an injunction in the United States District Court; the injunction was refused upon the ground that a labor dispute was involved (E.D.Ill., 1935, 9 F.Supp. 635). This ruling was reversed in the Court of Appeals upon the ground that since the employer was indifferent, the dispute was not between any of the employees and the employer, and that this was necessary to constitute a labor dispute under the Norris-LaGuardia Act (7 Cir., 1935, 80 F.2d 1). Certiorari to the Supreme Court was denied (1936, 297 U.S. 714, 56 S.Ct. 590, 80 L.Ed. 1000), and the appellees urge that this case is therefore persuasive, notwithstanding Lauf v. E. G. Shinner & Co. But the Supreme Court has made clear that the denial of certiorari imports no expression of opinion upon the merits of a case. Hamilton-Brown Shoe Co. v. Wolf Brothers, 1916, 240 U.S. 251, 258, 36 S.Ct. 269, 60 L.Ed. 629. Atlantic Coast Line R. Co. v. Powe, 1931, 283 U.S. 401, 403, 51 S.Ct. 498, 75 L.Ed. 1142. Moreover, the Court of Appeals later recognized that its ruling in United Electric Coal Companies v. Rice was overruled by the Supreme Court in Lauf v. E. G. Shinner & Co. and New Negro Alliance v. Grocery Co. See Blankenship v. Kurfman, 7 Cir., 1938, 96 F.2d 450, 453.

II

But the appellees urge further, in support of the trial court's issuance of the injunction, that if it is to be said that a labor dispute existed at some stage of the instant controversy, that dispute terminated once the appellee union was chosen by a majority of Zirkin's employees as their collective bargaining agency. Or, putting it somewhat differently, the appellees say that if what is involved in the instant case is a labor dispute, it is not the kind of labor dispute in which an injunction is forbidden, but is on the contrary one in which despite the Norris-LaGuardia Act an injunction may and should issue. The appellees call attention to Section 7 of the National Labor Relations Act, 29 U.S. C.A. § 157, giving employees the right of self-organization, and of collective bargaining through representatives of their own choosing, and urge thereunder that the employees of Zirkin's who have by majority vote chosen the appellee union as their bargaining agency, have a vindicable right of self-organization and collective bargaining. The appellees rely also upon subsection (5) of Section 8 of the same Act, 29 U.S.C.A. § 158(5), making it an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees, and further upon subsection (a) of Section 9 of the Act, 29 U.S.C.A. § 159(a), providing that representatives selected for collective bargaining by a majority of the employees in a unit appropriate for such purpose, shall be the exclusive representatives of all of the employees in such unit. Therefore, say the appellees, the picketing by the appellant union after a majority of Zirkin's

---

[7] As pointed out above, although there was in the instant case a conflict in the evidence on the subject of coercion, the trial court found that there was no coercion by Zirkin's in respect of the refusal of the majority of the employees to join the appellant union or in respect of the formation by a majority of the employees of the appellee union. The appellees therefore treat the case as one in which Zirkin's was indifferent to the choice. On the question of wages, hours and working conditions there was evidence that the contract sought by the appellant union was more burdensome in its terms upon the employer than the one which Zirkin's signed with the appellee union; but there was no finding made upon this subject.

employees had chosen the appellee union as their bargaining agency, is unlawful, both as an interference with the vindicable right of the employees to self-organization and collective bargaining and as an attempt to compel the employer to commit an unfair labor practice; and therefore, the appellees urge, the picketing is subject to injunction.

In developing this position, the appellees rely upon the following cases: Texas & N. O. R. Co. v. Ry. Clerks, 1930, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; Virginian Ry. v. Federation, 1937, 300 U. S. 515, 57 S.Ct. 592, 81 L.Ed. 789; National Labor Board v. Jones & Laughlin, 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Oberman & Co. v. United Garment Workers of America, W. D.Mo., 1937, 21 F.Supp. 20; Union Premier Food Stores v. Retail Food C. & M. Union, 3 Cir., 1938, 98 F.2d 821; Donnelly Garment Co. v. International L. G. W. Union, W.D.Mo., 1937, 21 F.Supp. 807. In Texas & N. O. R. Co. v. Ry. Clerks, it was held by the Supreme Court that the right of self-organization and designation of representatives for collective bargaining given interstate railway employees by Section 2, Third, of the Railway Labor Act of 1926 (44 Stat. 577, 45 U.S.C.A. § 152, subd. Third), was not a mere abstract right, but was one vindicable by the employees in injunction proceedings against a carrier which was seeking, notwithstanding that an employee union representing a majority had long been established, to organize another union. This ruling recognized a negative duty in the carrier, that is, a duty not to interfere with the employees' free right of self-organization or designation of representatives. In Virginian Ry. v. Federation, the Supreme Court took a further step. It held that the provisions of Section 2, Ninth, of the Railway Labor Act of 1926, as amended by the Act of June 21, 1934 (48 Stat. 1185, 45 U.S.C.A. § 152 subd. 9), requiring carriers, upon receipt of a certification from the National Mediation Board, to treat with the representatives of the craft or class so certified as collective bargaining representatives, imposed a positive duty upon the carrier to treat with the certified representatives, and also forbade it to enter into a contract except with such representatives; and the Court held that this positive duty was enforceable in equity against the carrier. The Court held also in this case that to the extent that they conflicted with the provisions of Section 2, Ninth, of the Railway Labor Act, authorizing the relief above described, the restrictions of the Norris-LaGuardia Act in respect of injunction proceedings were inoperative—that the provisions of the Railway Labor Act could not be rendered nugatory by the earlier and more general provisions of the Norris-LaGuardia Act. Applying these rulings in the Supreme Court by analogy to the National Labor Relations Act, the appellees argue that under the latter Act their rights are concrete and enforceable rather than abstract, and that under that Act there is a positive duty upon Zirkin's in the instant case to treat with the appellee union as the representative of the majority of the fur worker employees and with that union only, and that therefore the appellees, both Zirkin's and the appellee union, can by injunction proceedings restrain the appellants from attempting to coerce Zirkin's into recognizing and bargaining with the appellant union. The appellees sustain the suggested analogy between the National Labor Relations Act and the Railway Labor Act and the rights of employees under each, by reference to National Labor Board v. Jones & Laughlin, where the Supreme Court said:

"The provision of § 9 (a) [of the National Labor Relations Act] that representatives, for the purpose of collective bargaining, of the majority of the employees in an appropriate unit shall be the exclusive representatives of all the employees in that unit, imposes upon the respondent only the duty of conferring and negotiating with the authorized representatives of its employees for the purpose of settling a labor dispute. This provision has its analogue in § 2, Ninth, of the Railway Labor Act which was under consideration in Virginian Railway Co. v. System Federation, No. 40, supra. The decree which we affirmed in that case required the Railway Company to treat with the representative chosen by the employees and also to refrain from entering into collective labor agreements with anyone other than their true representative as ascertained in accordance with the provisions of the Act. We said that the obligation to treat with the true representative was exclusive and hence imposed the negative duty to treat with no other. . . . We think this construction also applies to § 9 (a) of the National Labor Relations Act." [301 U.S. at page 44, 45, 57 S.Ct. at page 627, 81 L. Ed. 893, 108 A.L.R. 1352].

The appellees rely upon Oberman & Co. v. United Garment Workers of America and Union Premier Food Stores v. Retail Food C. & M. Union, as recognizing and applying their theory above set forth. In the first of these two cases, the action was in equity by the employer Oberman & Co. for an injunction. There had been formed without employer domination, in a manufacturing plant operated by the Company, the Springfield Oberman Employees' Association, and with it the Company had entered into a closed shop contract. Thereafter the defendant, United Garment Workers, demanded recognition as the sole bargaining agency and the signing of a contract constituting it such, and called a strike of such employees as belonged to it, the violence of the strike closing the factory. In this situation the Company asked the defendant to invoke action by the National Labor Relations Board and this the defendant did; and after a hearing and election the Board certified the Employees' Association, rather than the defendant, as the proper bargaining agency. Notwithstanding this the defendant continued the strike. The injunction sought by the plaintiff company was to enjoin the picketing. The trial court denied a motion to dismiss the plaintiff's bill. This ruling sustains an employer's right to an injunction in a case like the instant case in that two unions were disputing for recognition as the collective bargaining agency for the employees, the employer having contracted with the one representing the majority. The theory of the district judge was that once a certificate had been issued by the Board, any labor dispute which might be said to have existed theretofore, ended; and that the suit by the employer was under the National Labor Relations Act and not subject to the restrictions of the Norris-LaGuardia Act. The court said:

"In the instant case there is no industrial dispute. If such dispute ever existed, it has been settled by the only authority that could settle such controversy, the National Labor Relations Board. For the court now to dismiss the bill on the ground of technical defect or weakness in surplus averments of the bill would be to permit a recurrence of the disorders which caused a complete shutdown of the factory, took away the employment and wages of 950 employees, and created discord, dissension, and unrest in the community where the factory is located.

"As was said in Virginian Ry. Co. v. System Federation No. 40, supra . . . : 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved. * *. * The fact that Congress has indicated its purpose to make negotiation obligatory is in itself a declaration of public interest and policy which should be persuasive in inducing courts to give relief.' " [21 F. Supp. at page 27]

The trial judge also reasoned that the express suspension of the Norris-LaGuardia Act by subsection (h) of Section 10 of the National Labor Relations Act, 29 U.S.C.A. § 160(h), with the effect of permitting injunction suits in aid of review or enforcement of final orders of the Board, is to be read into Section 9 of the Act, 29 U.S.C.A. § 159, with the effect of permitting injunction suits in protection of certification orders. Lauf v. E. G. Shinner & Co. had not been decided by the Supreme Court at the time of the decision in this case.

In Union Premier Food Stores v. Retail Food C. & M. Union the defendants were four unions which were attempting by picketing to cause employees to join them although the employees had theretofore refused—and this without influence on the part of the employer Company. Thereafter another union claimed to represent a majority of the employees. Then the employer, seeking to end the picketing by the defendant unions, agreed to enter into a contract with them; but the second union invoked action on the part of the National Labor Relations Board and the latter assumed jurisdiction and notified the plaintiff that charges of unfair labor practice had been filed against him. In the meantime the picketing continued, with consequent probable destruction of the employer's business, which involved the selling of perishable commodities. Contending that since the Labor Board had assumed jurisdiction of the dispute it was disabled from actually entering into a contract with the defendant unions, the Company sought by a bill in equity to enjoin the picketing. The trial court ordered an injunction and this order was sustained by the Court of Appeals. The theory of the majority in the latter court was that no labor dispute was involved in the case since the disputants were the unions, and that it could not be

thought that Congress, under the National Labor Relations Act, intended to permit the destruction of the business of an employer who stood ready to obey any orders of the Board under the Act when issued. The majority distinguished Lauf v. E. G. Shinner & Co., which by this time had been decided in the Supreme Court, upon the ground that therein the dispute was entirely between the employer and the picketing union because the employer refused to require his employees to join the union under penalty of discharge, whereas in the case under discussion the Board had taken that question away from the consideration of both the employer and the unions, so that they might not longer dispute about it. The court said that the refusal of the employer to bargain collectively with either the picketing unions or the other union was not a refusal to bargain collectively with a representative of the employees, because while it was true that the other union claimed to be the representative, so did the picketing unions. The majority distinguished Lauf v. E. G. Shinner & Co. upon the further ground that in that case a Wisconsin State court had construed the facts to involve a labor dispute under Wisconsin law, whereas in Pennsylvania, where the case under discussion arose, the local courts had not yet defined what constituted a labor dispute under the Pennsylvania Labor Relations Act [43 P.S.Pa. § 211.1 et seq.]. The majority finally held that since there was no labor dispute in which the employer was involved, the District Court was not bound by the provisions of the Norris-LaGuardia Act in respect of injunctions. [8]

The last case relied upon by the appellees, Donnelly Garment Co. v. International L. G. W. Union, was again a two-union dispute for collective bargaining rights, with the employer indifferent. The employer had entered into a terms and conditions of employment contract with a plant union formed without employer domination. The defendant union, none of whose members were employed in the plant, was engaged in picketing. The District Court of the United States for the Western District of Missouri issued an injunction upon the theory that no labor dispute was involved. Lauf v. E. G. Shinner & Co. and New Negro Alliance v. Grocery Co. had not yet been decided. But the Court of Appeals in a later stage of the case returned it to the District Court with directions, stated upon the faith of the two cases last referred to—which had in the meantime been decided—that a labor dispute was involved, thus discountenancing the position originally taken by the District Court. (8 Cir., 1938, 99 F.2d 309; certiorari denied January 16, 1939)

### III

We have given attentive consideration to the position taken by the appellees, but we nevertheless reach the conclusion that it is not a supportable one. The essential predicate of the argument is that once a majority of the employees of a particular

[8] There was a dissent in this case by Circuit Judge Biggs who took the position that the definitions of labor dispute under the Norris-LaGuardia Act and the National Labor Relations Act are substantially the same, and that if it can be said that there is no labor dispute within the Norris-LaGuardia Act then there could be none within the National Labor Relations Act, and, therefore, under the reasoning of the majority, the Board would itself have no jurisdiction to determine the controversy between the unions. Judge Biggs concluded that there was a labor dispute within the definitions of both Acts and that the provisions of the Norris-LaGuardia Act in respect of injunctions were not suspended. He conceded that the dispute in the case was a dispute between unions and not with the employer, but he was of the view that the phrase regarding proximate relationship used in the Act made clear that despite the fact that a proximate relationship of employer and employees does not exist still a dispute may be a labor dispute. Judge Biggs relied upon Lauf v. E. G. Shinner & Co. in the Supreme Court as confirming this view for the reason that in that case none of the employees were members of the picketing union. It is to be noted that Judge Biggs read Lauf v. E. G. Shinner & Co. as involving two unions. He urged, however, that they were not contesting unions because the employees' union was not a party to the controversy. Judge Biggs said finally (98 F.2d at page 830): "The fundamental purposes of the National Labor Relations Act are to put an end to labor disputes which tend to burden commerce and to terminate unfair practices which lead to labor disputes. The fundamental purpose of the Norris-LaGuardia Act is to preserve to labor the rights specified therein. Neither the National Labor Relations Act nor the Norris-LaGuardia Act should be circumscribed or limited by fine distinctions as to relationships of disputants. . . ."

employer have, without coercion on his part, made their choice of a bargaining unit, any labor dispute which may be said to have been involved theretofore has ended; therefore the restrictions of the Norris-LaGuardia Act upon the issuance of injunctions are inoperative. Applying this proposition to the instant case the appellees say that the trial court has found that a majority of the employees of Zirkin's have selected the appellee union as their collective bargaining agency; therefore the labor dispute has ended and injunction may issue in protection of the choice of the majority. But this argument rests upon the assumption that the Federal courts have power to determine the lawful selection of a bargaining agency by employees. If the trial court had no such power, then its findings of fact in respect of the selection of a bargaining agency by a majority of the employees of Zirkin's without employer coercion are without force, and it cannot be said that the labor dispute has ended so that the Norris-LaGuardia Act restrictions upon the issuance of injunctions are inoperative. We think that the assumption that the trial court had power to make the determination in question is invalid and that the appellees' whole argument therefore falls. [9] We reach this conclusion for the following reasons:

 Neither the National Labor Relations Act nor the Norris-LaGuardia Act expressly confers upon the Federal courts power to determine what is the appropriate and lawfully selected collective bargaining unit for employees. And we think no such power is implied in the statutes mentioned. On the contrary it seems clear that by the National Labor Relations Act Congress intended to confer exclusive initial jurisdiction upon the Board to determine the appropriate and lawfully selected bargaining unit for employees, and intended to give to the Board alone appropriate machinery, to wit, elections machinery, for making such determination. It is true that the Act does not in express

terms make the certification power of the Board exclusive. But this nevertheless seems to us to be the plain intent of the Act, and we think that to give it a contrary construction would be inconsistent with the development of labor legislation and the legislative history of the Act itself. The National Labor Relations Act was the culmination of long continued efforts on the part of labor to establish by statute in employees substantive rights of self-organization and selection of collective bargaining representatives; and to define, for the protection of such rights, unfair labor practices by employers; and to constitute, separate from the courts, except in respect of enforcement proceedings, a new agency with both power and machinery appropriate to the enforcement of the rights recognized and to the prevention of the practices denounced. Certainly Congress in the Act did confer upon the Board the power to determine what is the appropriate and lawfully selected collective bargaining unit for employees. And we should not, unless, upon consideration of the Act and its language and purpose, we find it mandatory to do so, put such a construction thereon as would result in the anomalous existence of concurrent initial jurisdiction in both the courts and the Board. In the absence of a principle that, as between administrative tribunals and courts, the jurisdiction first attaching shall prevail—and we know of no such principle—the consequence of such double jurisdiction would be most serious.

In respect of the cases relied upon by the appellees: Texas & N. O. R. Co. v. Ry. Clerks and Virginian Ry. v. Federation are not authority for an action by either an employer or employees to restrain picketing by employees. Each of those cases involved proceedings brought by representatives of the majority of the employees against the employer, rather than against third parties such as the appellant union and its officers and members in the instant case. Only by an extension of these cases

---

[9] We note a further assumption in the position of the appellees, to wit, that once a choice of a collective bargaining agency has been made by a majority of the employees of a particular employer, such choice is irrevocable and therefore subsequent persuasion, by strike and picketing, toward a change of choice, is unlawful. Whether or not the National Labor Relations Act makes a choice of a collective bargaining agency irrevoc-

able even after certification, and whether a construction of the Act forbidding persuasion toward a change of choice would be violative of Section 13 of the Act (to the effect that nothing in the Act shall be construed so as to impede or diminish the right to strike) and violative of the right of freedom of expression guaranteed by the Constitution, are questions which, in the view we take of the case, it is unnecessary for us to rule upon.

could there be spelled out a right in an employer to restrain picketing, the purpose of which is to induce him to bargain with a union other than one selected by the majority or a right in employees to restrain picketing by other employees. Furthermore, the two cases mentioned are of no avail to the appellees once it is concluded that the Federal courts are without jurisdiction to determine what is the appropriate, and which of two disputing unions is the lawfully selected, bargaining unit for employees; because if the findings of fact to the effect that the appellee union was the lawfully selected bargaining agency for the majority are disregarded, then there is, under the evidence, an undetermined dispute as to which is the majority union, the appellants claiming that the appellee union was company fomented; therefore, no vindicable right enforceable under the general theory of the two cases mentioned has yet demonstrably arisen. In Oberman & Co. v. United Garment Workers of America there had been a certification by the National Labor Relations Board of the union with which the employer had contracted, and that case is unlike the instant case in that respect. Note also that that case is much weakened by the fact that it was decided prior to Lauf v. E. G. Shinner & Co. in the Supreme Court. Union Premier Food Stores v. Retail Food C. & M. Union is, as decided by the majority, an apparently strong case on its face for the appellees—for the reason that it is one where the employer is given injunctive relief in respect of a dispute between two unions, as to the choice between which by the employees he is indifferent, and he is allowed this relief before the employees have made their choice. A fortiori, it may be urged, where they have made their choice, as in the instant case, an injunction should issue. And it may be further urged that in that case there had been no certification by the Labor Board as in Oberman & Co. v. United Garment Workers of America. But we cannot accept the conclusion reached by the court in Union Premier Food Stores v. Retail Food C. & M. Union that, merely because the employer was indifferent as to the choice of his employees between the competing unions, there was no labor dispute under the terms of the Norris-LaGuardia Act. We have demonstrated, at the outset of this opinion, that the language of the Act, especially as applied in Lauf v. E. G. Shinner & Co. and New Negro Alliance v.

Grocery Co., is sufficiently broad to cover that kind of situation. Further, in Union Premier Food Stores v. Retail Food C. & M. Union, while there had been no certification by the Labor Board, nevertheless there had been an assumption of jurisdiction by that Board. The case might therefore conceivably be justified upon the theory that the action of the court was not in aid of the employer, in defiance of the Norris-LaGuardia Act, but was to preserve the *status quo* for the uses and purposes of the National Labor Relations Board. Indeed, the majority opinion asserted this as a partial basis for its ruling. But in the instant case there has been neither certification nor assumption of jurisdiction by the Board. By ruling that these distinctions are of moment in respect of the instant case, we do not assume to decide that if the Labor Board had made a certification or had assumed jurisdiction, injunction could issue. Such a question we should not rule upon until it is directly before us.

The conclusions we have reached above are confirmed in recent cases. In Lauf v. E. G. Shinner & Co. in the Court of Appeals (7 Cir., 1936, 82 F.2d 68), an argument was made similar to that made by the appellees herein. There was reference by the court to United Electric Coal Companies v. Rice, where two unions were in dispute, with the employer indifferent, and the situation involved in Lauf v. E. G. Shinner & Co. was compared. The Court of Appeals said:

" . . . neither the employer nor any of his employees are engaged or involved in a labor dispute with anyone. The controversy, rather, seems to be a unilateral one with the sole object of coercing appellee to compel its employees to join the appellant union, in order that it may represent the employees in their dealings with the employer. Appellants seek to accomplish that result by picketing and damaging the employer's business. But, under the Norris-LaGuardia Act and the Wisconsin Labor Code, it would amount to a violation of both the federal and state law if appellee complied with appellants' demands, for under those laws the employer is specifically enjoined from influencing his employees in their choice of a union or their representative. The employees have refused to join the appellant union, they have organized their own union and have selected their own representative without

interference or participation of their employer, and their rights in these respects are as fully protected by the laws as are those of appellants.

"The declared public policy of both the nation and State of Wisconsin establishes the substantive rights of appellee's employees which the courts will protect by injunction, though no specific provision therefor be contained in either Act. Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; Trustees of Wisconsin State Fed. of Labor v. Simplex Shoe Mfg. Co., 215 Wis. 623, 256 N.W. 56. It being unlawful for appellee to dictate to its employees what organization they should join, or what representative they should select, and likewise unlawful to refuse to recognize the agency which they had selected, and recognize another representative which they had rejected, it follows that appellants' demand upon appellee was unlawful." [82 F.2d at page 72]

This, it will be noted, is substantially the reasoning of the appellees in the instant case. But it was rejected in the Supreme Court where, speaking for the majority, Mr. Justice Roberts said:

"The Court of Appeals erred in holding that the declarations of policy in the Norris-LaGuardia Act and the Wisconsin Labor Code to the effect that employes are to have full freedom of association, self-organization, and designation of representative of their own choosing, free from interference, restraint or coercion of their employers, puts this case outside the scope of both acts since respondent cannot accede to the petitioner's demands upon it without disregarding the policy declared by the statutes. This view was expressed in the court's first opinion on the appeal from the issue of an interlocutory injunction, and the opinion on the appeal from the final order adopts what was said on the earlier appeal as the law of the case. We find nothing in the declarations of policy which narrows the definition of a labor dispute as found in the statutes. The rights of the parties and the jurisdiction of the federal courts are to be determined according to the express provisions applicable to labor disputes as so defined." [303 U.S. at page 330, 58 S.Ct. at page 581, 82 L.Ed. 872.]

In Lund v. Woodenware Workers Union, D.Minn.1937, 19 F.Supp. 607, and in Blankenship v. Kurfman, supra, the same conclusions were reached that we have reached in the instant case. The first of these two cases ruled upon the right of an employer to an injunction and the second upon the right of employees. In Lund v. Woodenware Workers Union an employer proceeded in equity against the defendant Union, which appeared specially for the purpose of moving to vacate and quash his application for an injunction. It appeared from the employer's complaint that a majority of his employees had elected representatives for collective bargaining and that he had entered into a contract with them covering terms and conditions of employment, but that a minority of the employees had gone on strike and were, by acts of violence and intimidation, preventing the majority from working, with the result of closing the employer's factory so that he could not carry out the contract referred to. The employer relied upon subsection (a) of Section 9 of the National Labor Relations Act, 29 U.S.C.A. § 159(a), and urged that by reason thereof he had a right as employer to proceed in a Federal court to enjoin the minority from interfering with the contract made between him and the designated representatives of the majority. He urged that a necessary implication from the section referred to was that Congress intended that, once the majority, through their duly elected representatives, have entered into a contract with the employer upon the subject of wages, hours and conditions of employment, the minority are prevented from taking any action which will affect the integrity of the contract. To the contrary it was asserted by the defendant union that the court lacked jurisdiction because no federal question was involved and there was no justiciable controversy in the forum. It also urged that the court was without jurisdiction for the reason that the bill failed to allege compliance with the provisions of the Norris-LaGuardia Act as a condition precedent to injunctive relief. The case thus is on all fours with the instant case so far as the appellee Zirkin's is concerned. In a carefully considered opinion by District Judge Nordbye, the court, among other things said:

"Unquestionably, the contract that plaintiff contends he has entered into with the representatives of the majority of his employees may be entirely valid, but the mere fact that the employer has made a

valid contract with his employees does not, of itself, give rise to any justiciable controversy in federal court under the act. There is no intimation in the act that, merely because an employer has entered into a contract with a majority union, Congress assumed to vest jurisdiction in United States courts to protect or safeguard the integrity of such contract. . . .

\* \* \*

"When it is recognized that the act only seeks to compel the employer engaged in interstate commerce to deal in collective bargaining with the representatives of the majority, the assumption that plaintiff makes herein, that any act of the employees which interferes with the integrity of a contract that he may have seen fit to negotiate with representatives of the majority gives rise to relief under the Wagner Act in the courts in absence of some action of the Board, seems entirely unsound and erroneous. True, the plaintiff is prohibited from dealing collectively with any other group than the representatives of the majority, and if he presumes to ignore such representatives and deals collectively with some other group, there are ways and means which the National Labor Relations Board may take in order to effectuate the purposes of the act. But our courts would be flooded with injunction suits if plaintiff's contention is to be sustained, and we would have the anomalous situation of the courts endeavoring to determine whether or not the unit which is formed by the majority of the employees is appropriate for the purposes of collective bargaining, when it is clearly evident that Congress intended that all such questions should be determined by the Labor Board and not by the courts. Whenever a situation requires relief by reason of the violation of section 159(a), 29 U.S.C.A., it appears unmistakably that the National Labor Relations Board is vested with exclusive jurisdiction to effect the remedy. Section 159(a), 29 U.S.C.A., must be read in connection with section 159(b), . . . [10]

"This subsection vests exclusive jurisdiction in the Board to determine the unit in each case which will best effectuate the policies of the chapter in carrying out the collective bargaining with the employer.
. . .
\* \* \*

"Plaintiff presumably is correct in his position when he avers that, under the terms of the Wagner Act, he cannot bargain collectively with the representatives of the minority, and if he assumes to do so, he may be guilty of unfair labor practice, but the determination of his course in dealing with his employees is nevertheless not for the courts. Whether the particular group that it is alleged constitutes a majority should bargain for all the workers in the various departments of plaintiff's factory, is not under the court's supervision. This court cannot assume the authority granted to the Board, . . .

"The difficulty with the assumption of jurisdiction herein on the theory that plaintiff's case arises under the Wagner Act is due to the very apparent fact that the right that the plaintiff seeks to enforce is not created, either expressly or impliedly, by the federal statute in question, but by this proceeding he seeks to read into the act certain rights on behalf of the employer to proceed in a court of equity which Congress studiously refrained from giving to the employer. The courts cannot create a right that Congress did not see fit to grant. If any relief were granted under the complaint, the court would be legislating in a field where Congress failed to take action. . . ." [19 F.Supp. at page 609–611]

Blankenship v. Kurfman involved a bill by employees for an injunction. The plaintiffs were employees of the Central Illinois Light Company and were members of a Brotherhood of Electrical Workers selected by a majority, without employer domination, which was negotiating a contract with the Light Company in respect of employment at common labor. The defendant was a local of the International Hod Carriers Building and Common Laborers Union, and it attempted, for the purpose of obtaining work for its members, to negotiate a similar contract with the Light Company. Because of the prior negotiations with the Brotherhood, the Light Company refused to negotiate with the representatives of the defendant union, and subsequently entered into a contract with the Brotherhood. Members of the latter then attempted to work, but as a result of violence and threats purposed to intimidate them into joining the defendant union, they abandoned their jobs. The contract with the employer had been nego-

[10] National Labor Relations Act, Section 9 (a) and (b), 49 Stat. 453, 29 U.S.C.A. § 159(a, b.)

tiated and consummated generally in accordance with the National Labor Relations Act. There was no diversity of citizenship, and one of the grounds of federal jurisdiction relied upon by the plaintiffs was that the acts of the defendant union and its members denied the plaintiffs the free exercise of rights and privileges secured to them by the Act. The trial court found that the case did not involve a controversy between an employer and employees, and granted a temporary injunction, without the findings required by the Norris-LaGuardia Act. · The decree was reversed in the Court of Appeals with directions to dismiss the bill. The Court of Appeals ruled, upon the faith of Senn v. Tile Layers Union, Lauf v. E. G. Shinner & Co. and New Negro Alliance v. Grocery Co. that under the facts found by the District Court, a "case involving or growing out of a labor dispute" as defined in the Norris-LaGuardia Act, was disclosed, and that in consequence the District Court was without jurisdiction to issue an injunction without complying with the provisions of that Act. In discussing the proposition of the plaintiffs that the effect of the National Labor Relations Act, and especially Section 7 and subsection (a) of Section 9, was to create a federal right the violation of which by the defendant entitled the plaintiffs to injunctive relief, the opinion referred to and agreed with the conclusion to the contrary reached in Lund v. Woodenware Workers Union. Speaking for the court Circuit Judge Treanor said:

"The general purpose of the National Labor Relations Act is to provide methods of preventing or eliminating certain 'unfair practices' which have heretofore characterized the relation of employer and employee, and which have obstructed, or tended to obstruct, the free flow of commerce. The act creates certain rights and duties as between employer and employee and provides the procedure necessary to give effect thereto. It seems clear that the only rights which are made enforceable by the act are those which have been determined by the National Labor Relations Board to exist under the facts of each case; and when these rights have been determined, the method of enforcing them which is provided by the Act itself must be followed. And we find no provision in the act which can be construed as intending to create rights for employees which

can be enforced in federal courts independently of action by the National Labor Relations Board. Consequently, we hold that the contract in the instant case between the plaintiffs and their employer did not, by force of the National Labor Relations Act, create a right in the plaintiffs which was secured to them 'by the Constitution or laws of the United States.' Consequently, the alleged unlawful interference by the defendants with the plaintiffs' contractual rights did not give a cause of action of which a federal court would have jurisdiction in the absence of diversity of citizenship." [96 F.2d at page 454]

IV

Apparently invoking the doctrine that it is to be presumed that the legislature would not intend a law to work hardship or injustice and therefore the resolution of ambiguity in a statute should be in favor of a just and equitable operation of the law, the appellee Zirkin's separately urges upon the court the hardship to an employer who, indifferent as to the choice of a collective bargaining agency by his employees, is caught between the upper and nether millstones of disputing groups or unions. The argument is that unless injunction can issue in such a situation, the employer may well, for lack of other remedy, see his business destroyed, because neither union may be interested in applying to the National Labor Relations Board for an election and certification, and the employer is not, under the present terms of the National Labor Relations Act, given a right to invoke the jurisdiction of the Board to investigate and determine by election proceedings the appropriate bargaining unit and the agency reflective of the will of the majority of the employees.

While this argument is partially weakened by the fact that it rests upon an assumption that there is no possibility of protection of the employer under the Norris-LaGuardia Act, when under the terms of that Act injunction may issue if the required findings are made, nevertheless the argument of. hardship is impressive in this: Even if the evidence and findings are such that injunction may issue under the Norris-LaGuardia Act, still injunction is not an instrument which will excise the cause of the controversy. This can be accomplished only by· an election so conducted as to .result in a dependably free choice by a majority of the employees. And it is·

clear also that in the absence of a remedy for the employer, the dispute may proceed indefinitely, for lack of an invocation of jurisdiction of the Board by the competing unions. The union which believes itself to represent a majority may have no incentive to apply for an election; and the union which apparently has less than a majority may resist an election, at least until it is satisfied it has won over enough to constitute a majority. It is clear further that in such a situation there is no remedy for the employer under the National Labor Relations Act. That Act makes no provision for invocation of the election and certification powers of the Board by an employer. The result is an inequality before the law as between an employer and employees in this particular, namely, that while the employer has a substantive right to carry on his business, he lacks a legal remedy for protecting the same against injury through the struggle of competing unions, even though he be indifferent as to the choice of his employees between them; whereas the employees, in respect of their substantive rights of self-organization and collective bargaining, are afforded a protective remedy under the election and certification powers of the Board.

We are constrained to conclude nevertheless that not even this argument of hardship can avail the appellee Zirkin's. Where, under the language of a statute, the intent of Congress is plain, it is the duty of the courts to apply the statute as it stands, even if the consequence is hardship or injustice. And we think it so clear under the Norris-LaGuardia Act and the National Labor Relations Act, considered together, that the controversy involved in the instant case is a labor dispute and that only the National Labor Relations Board in the first instance can end that dispute by certification, and that no injunction can issue under the Norris-La-Guardia Act in the absence of the findings required thereby, that we must enforce this plain intent of the statute without regard to the hardship upon the employer. Such argument of hardship must be addressed to Congress in respect of the possibility of an amendment of the National Labor Relations Act in such manner as will give to employers a right to invoke the jurisdiction of the Board for a settlement of disputes concerning rights of representation. It would be, in our view, clear

judicial legislation, in which we have no right to indulge, for the court to give effect in this proceeding to the argument in question. The Supreme Court has held in Labor Board v. Jones & Laughlin that the onesidedness of the Act is a matter of Congressional policy which does not go beyond constitutional limitations.

In accordance with our conclusion that neither the appellee Zirkin's nor the appellee union has a right to an injunction in the instant suit, in the absence of the findings required by the Norris-LaGuardia Act, the order of the trial court herein is

Reversed and the case is remanded with directions to dissolve the injunction and dismiss the bill.

EDGERTON, Associate Justice, concurs in the result and in Parts I, II and III of the foregoing opinion.